UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| VALERIE KLINE,<br><br>    Plaintiff,<br><br>    v.<br><br>JOHN BERRY,<br>Director, Office of Personnel Management,<br><br>    Defendant. | Civil Action No. 10-1802 (RWR) (AK) |

## MEMORANDUM OPINION

Many discovery motions have been filed with the Court in this case. This memorandum opinion addresses Defendant's Motion for a Protective Order to Preclude the Deposition of Richard Lowe and Special Agent Derek Holt [37] ("Def.'s Mot.") and Plaintiff's Motion to Stay Depositions and Motion for Order on Related Matters [38] ("Pl.'s Mot."). Plaintiff seeks to depose five individuals, Derek Holt, Richard Lowe, Claudio Benedi, Stephen Hickman and Janet Smith. (Pl.'s Mot. at 1.) Plaintiff originally scheduled the depositions on May 8-10, 2012, with Mr. Holt and Mr. Lowe being the first two depositions. (*Id.*) Defendant filed its Motion for a Protective Order on the evening of May 4, 2012 and the depositions were postponed until a ruling on Motion for a Protective Order could be reached.[1]

---

[1] Although Defendant does not object to Plaintiff deposing Mr. Benedi, Mr. Hickman and Ms. Smith, Plaintiff expressed a desire to depose Mr. Holt and Mr. Lowe prior to deposing the other individuals, leading to the postponement of all five depositions.

-1-

**I.  BACKGROUND**

This case is an employment discrimination action based on Plaintiff Valerie Kline's ("Plaintiff" or "Ms. Kline") employment at the Office of Personnel Management ("OPM") as a Management Analyst in the Publications Management Group.  (Amended Compl. [3] at ¶ 1.)  Plaintiff was hired into that role in 2002.  (*Id.* at ¶ 13.)  On March 29, 2006, Plaintiff's superiors received an e-mail raising concerns that, among other allegations, Ms. Kline was using her work computer inappropriately and was attempting to procure weapons and ammunition from someone she knew online.  (Decl. of Inspector General Patrick E. McFarland [37-1] at ¶ 4; Pl.'s Opp. to Mot. For Protective Order [44] at 6.)  Plaintiff was placed on paid administrative leave on April 5, 2006 pending an Office of the Investigator General ("OIG") investigation.  (*Id.* at ¶ 5.)  Plaintiff returned to work on June 20, 2006.  (Amended Compl. at ¶ 45.)

Plaintiff's Amended Complaint includes five counts.  First, Plaintiff alleges that she was discriminated against on the basis of race and sex when she was placed on administrative leave.  (*Id.* at ¶ 62.)  Second, Plaintiff alleges that she was placed on administrative leave in retaliation for filing EEO complaints against her superiors that were pending as of April 2006.  (*Id.* at ¶ 64.)  Third, Plaintiff alleges that, upon returning from administrative leave, her duties were diminished, moving from regulatory work and graphics projects to routine, administrative and clerical duties.  (*Id.* at ¶ 66.)  Fourth, Plaintiff alleges that she was discriminated against on the basis of sex when her regulatory duties were given to a male employee.  (*Id.* at ¶ 68.)  Fifth, Plaintiff alleges that she was retaliated against when, upon returning from administrative leave, she did not have the same equipment and software that she had prior to being placed on administrative leave.  (*Id.* at ¶ 70.)

## II.  STANDARD OF REVIEW

Courts have broad discretion to resolve pending discovery matters.  Fed. R. Civ. P. 26(b)(2)(C) (requiring the court to limit extent of discovery when "the burden or expense of the proposed discovery outweighs its likely benefit); *see also Nu Image Inc.v. Does 1-22, 322*, 799 F. Supp. 2d 34, 36-37 (D.D.C. 2011).  This discretion extends to Rule 26(c), under which "the court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including . . . forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters."  Fed. R. Civ. P. 26(c)(1).  The party seeking the protective order has the burden of showing the good cause required by Rule 26(c).  *Alexander v. FBI*, 186 F.R.D. 71, 75 (D.D.C. 1998).  Generally, courts regard the complete prohibition of a deposition as an "extraordinary measure [] which should be resorted to only in rare occasions."  *Id.*

## III.  DISCUSSION

**A.  Special Agent Derek Holt**

Defendant wishes to limit the scope of deposition questions asked of Derek Holt.  (Def.'s Mot. at 1.)  Agent Holt works for the Office of Inspector General ("OIG") and was the agent who handled the investigation into the allegations about Plaintiff.  (*Id.* at 11.)  The OIG issued a report regarding the investigation, and Plaintiff has seen that report, with some redactions.  (*Id.* at 14.)  Defendant does not seek a protective order preventing the deposition of Agent Holt; rather, it seeks to limit the scope of the deposition, preventing Plaintiff from inquiring about OIG investigations generally, and how the investigation was conducted in this case.  (Def.'s Mot. at

15-16; Def.'s Reply at 4-5.)  These topics include:  (1) OIG's procedures for conducting investigations, (2) the decision-making process in determining the focus of investigations and (3) the process by which reports are finalized.  (*Id.* at 16.)

In her opposition to Defendant's motion, Plaintiff states that:

> [b]y deposing [Agent] Holt, Plaintiff will seek to discover the truth about [Agent] Holt's findings and obtain evidence to support a finding that he failed to thoroughly and impartially investigate allegations unrelated to the weapons allegations, that he did not have the evidence to support many of his conclusions propounded in his report, and that he exceeded his authority and the scope of the investigation by reporting on matters that were nonprobative, irrelevant, inaccurate, and highly prejudicial.

(Pl.'s Opp. at 16.)  Plaintiff takes issue with some of Agent Holt's statements in the report, stating that they "are generalizations based on stereotypical prejudices and not supported by fact," including "prejudicial statements about [Plaintiff's] website." (*Id.* at 15-16.)  Finally, Plaintiff is looking to obtain the identity of the informant whose e-mail triggered the investigation.  (*Id.* at 9.)

Defendant relies upon the "law enforcement investigative privilege" to support a limitation on the scope of Agent Holt's deposition.  (Def.'s Mot. at 15.)  The law enforcement investigative privilege is a qualified privilege.  *In re Sealed Case*, 856 F.2d 268, 271 (D.C. Cir. 1988).  To assert the privilege, an agency must: (1) submit a formal claim of privilege by the head of the department that has control over the information; (2) assertion of the privilege must be based on actual personal consideration by that official; and (3) the information for which the privilege is claimed must be specified, with an explanation of why it properly falls within the scope of the privilege.  *In re Sealed Case*, 856 F.2d at 271; *Singh v. South Asian Society of George Washington University*, 06-cv-574, 2007 WL 1556669, *3 (D.D.C. May 24, 2007).

In support of limiting Agent Holt's deposition, Defendant submits a declaration from the Inspector General Patrick E. McFarland, who identified the information to be withheld and the justifications for withholding the information. (Decl. of Patrick McFarland, [37-1] at 3-5.) The OIG is the department that has control over the information and Mr. McFarland stated he was the decision maker in determining the privileged information. Thus the first two requirements for the privilege are satisfied.

Looking at the third requirement, an evaluation of the public interest in nondisclosure against the requester's need for the information, courts generally use a balancing test involving ten factors. *Tuite v. Henry*, 98 F.3d 1411 (D.C. Cir. 1996). These factors are:

> (1) The extent to which disclosure of an informant will thwart governmental processes by discouraging citizens from giving the officials information; (2) the impact upon persons who have given information of having their identities disclosed; (3) the degree to which governmental self-evaluation and consequent program improvement will be chilled by disclosure; (4) whether the information sought is factual data or evaluative summary; (5) whether the party seeking discovery is an actual or potential defendant in any criminal proceeding either pending or reasonably likely to follow from the incident in question; (6) whether the investigation has been completed; (7) whether any interdepartmental disciplinary proceedings have arisen or may arise from the investigation; (8) whether the plaintiff's suit is non-frivolous and brought in good faith; (9) whether the information sought is available through other discovery or from other sources; and (10) the importance of the information sought to the plaintiff's case.

*Id.* at 1417. Here, the factors weigh against Agent Holt being deposed about OIG's practices and procedures. Plaintiff wants to inquire into the details of the investigation itself; specifically, who Agent Holt spoke to; what facts he gathered; and how he, and OIG in general, used those facts to arrive at the conclusions in the report. (Pl.'s Opp. at 9-11.) Plaintiff requested that Agent Holt bring to the deposition "any files, notes, print outs of web pages or

other documents to refresh your memory concerning the contents of the [OIG Report]." (Def.'s Mot. at 18.)  Disclosure of the details of the investigation would have a chilling effect on individuals cooperating with future investigations and on OIG's analysis of the collected information when coming to its conclusions.  *See Jones v. City of Indianapolis*, 216 F.R.D. 440, 445-46 (S.D. Ind. 2003) (release of information through deposition of police sergeant who conducted investigation into potential police misconduct would have chilling effect on witnesses revealing information in future investigations); *Haber v. Evans*, 03-cv-3376, 2004 WL 963995 (E.D. Pa. May 4, 2004) (finding privilege applies to OIG investigative files to protect government sources and enhance effectiveness of investigative techniques and procedures). Allowing OIG to investigate allegations of wrongdoing knowing that the contents of the investigation will remain confidential is a strong public interest.

      Moreover, the importance of the information sought through Agent Holt's deposition to Plaintiff's case is marginal.  Two of Plaintiff's claims allege that she was improperly placed on administrative leave.  It was neither Agent Holt, nor the OIG's decision to place Plaintiff on administrative leave.  (*See* Compl. ¶ 35; Pl.'s Opp. at 6-7.)  Plaintiff states in the Complaint that her supervisors at OPM, Mr. Davis and Mr. Benedi, were ultimately responsible for the decision to place Plaintiff on administrative leave.  (*See* Compl. at ¶ 36.)

      Plaintiff's last three claims address her diminution of duties after returning from administrative leave.  As noted above, Agent Holt conducted the investigation and was not responsible for determining Plaintiff's duties once she returned from leave.  In his role as investigator for the OIG, no evidence suggests that he would have any information relevant to Plaintiff in her pursuit of these three claims.  *See Jones*, 216 F.R.D. at 448 (the official who

conducted the investigation does not have meaningful information about the case beyond information pertaining to the investigation).

Some factors weigh in favor of disclosure: the investigation is complete, no disciplinary proceedings have arisen from the investigation, Plaintiff's suit is non-frivolous.  However, the potential chilling effect on future investigations and the apparent marginal importance of the information to Plaintiff's claims overcome the favorable factors and weigh against disclosure.

Accordingly, Plaintiff may depose Agent Holt about the contents of the OIG Report and the meaning of any language contained in the report.  Agent Holt may assert the law enforcement investigatory privilege regarding OIG's investigative procedures including the identity of the informant, the actions taken by Agent Holt and OIG to conduct the investigation, the contents and sources of any information obtained that is not included in the report and the facts used to come to the conclusions in the report.

### B.  Richard Lowe

Plaintiff also wants to depose Richard Lowe ("Mr. Lowe").  Mr. Lowe was the Deputy Chief of Staff at OPM at the time Plaintiff was placed on administrative leave and now is the Director, Executive Secretariat & Ombudsman ("ES&O"), OPM.  (Def.'s Mot. at 1.)  Defendant wants to preclude Plaintiff from deposing Mr. Lowe, claiming that he is a "high-ranking official" and that information obtained by deposing Mr. Lowe would not lead to the discovery of admissible evidence under Rule 26(b)(1).  (*Id.*)

### 1. High-Ranking Official

A protective order should be granted if (1) an individual is high-ranking and (2) the movant's concern of harm to the official outweighs the adversary's significant interest in preparing for trial. *Byrd v. Dist. of Columbia*, 259 F.R.D. 1, 6 (D.D.C. 2009) (Kay, J.) (citing *Low v. Whitman*, 207 F.R.D. 9, 10-11 (D.D.C. 2002) (Facciola, J.)). Examples from previous cases are the best guidance in defining "high-ranking." *See* Low, 207 F.R.D. at 12. In *Byrd*, the undersigned held that the Deputy Mayor of the District of Columbia and the General Counsel for the D.C. Department of Youth and Rehabilitation Services were not "high-ranking officials." 259 F.R.D. at 7-8. In *Low*, the court found that the Deputy Chief of Staff of the United States Environmental Protection Agency ("EPA") was a "high-ranking official." 207 F.R.D. at 11. Other examples of "high-ranking officials" include the Mayor of the District of Columbia, *Alliance for Global Justice v. Dist. of Columbia*, No. 01-cv-811, 2005 WL 1799553 (D.D.C. July 29, 2005); United States Senators, *Bardoff v. United States*, 628 A.2d 86 (D.C. 1993); and close assistants to the President of the United States. *Alexander v. F.B.I.*, 186 F.R.D. 1, 4 (D.D.C. 1998).

The rationale behind prohibiting the depositions of "high-ranking officials" is to allow high-level public servants to spend their valuable time performing their duties rather than preparing for and testifying in depositions, unless the individual has some relevant personal knowledge about the subject matter. *See Byrd*, 259 F.R.D. at 7; *Low*, 207 F.R.D. at 12. Such high-ranking officials are also likely to be subject to a high volume of lawsuits, either as a named individual or on behalf of an agency. Accordingly, "it is the current position [of the official], and not the former position, that is evaluated." *Byrd*, 259 F.R.D. at 8.

Although Mr. Lowe is an important individual within OPM, he does not qualify as a "high-ranking official." Mr. Lowe is currently the Director, Executive Secretariat & Ombudsman, OPM. Defendant states that "Mr. Lowe's office is located in the Director's suite and he reports directly to the Director of OPM while managing the day-to-day operations of the ES&O." (Def.'s Mot. at 13.) While Mr. Lowe may work in the Director's suite and report to the Director, the chart of the OPM organizational structure does not list him under the Office of the Director.[2] Rather, the ES&O is one of many subdivisions of OPM and certainly many individuals report directly to the Director of OPM. The movant has not presented evidence of substantial harm to Mr. Lowe that would preclude Plaintiff from conducting his deposition.

### 2. Discovery of Admissible Evidence

Defendant also argues that Mr. Lowe has no direct knowledge of Plaintiff's claims, and therefore his deposition will not lead to the discovery of admissible evidence. Fed. R. Civ. P. 26(b)(1); (Def.'s Mot. at 7.) Plaintiff asserts three subjects where Mr. Lowe has relevant knowledge that Plaintiff cannot obtain from other sources. First, Plaintiff alleges that she had "substantial contact with Mr. Lowe's office" prior to being placed on administrative leave, but no contact with his office upon her return, showing a diminution of duties. (Pl.'s Opp. at 27.) Second, Plaintiff asserts that Mr. Lowe told Mr. Benedi to keep Plaintiff out of the Director's suite. (*Id.* at 28.) Third, Plaintiff notes that the regulatory issuances program was transferred to the ES&O, which Mr. Lowe directs, and Plaintiff believes that she should have been transferred to the ES&O. (*Id.* at 22, 27-28.) She argues that she was not transferred to the ES&O because of

---

[2] http://www.opm.gov/about_OPM/reorg-2010/orgchart.pdf

the "stigma" associated with being placed on administrative leave. (*Id.* at 22.) (*Id.*)

Plaintiff alleges that she had substantial contact with the Director's suite but lost such contact after being placed on administrative leave and deposing Mr. Lowe could lead to the discovery of admissible evidence because it affected her claim of diminution of duties. Plaintiff's allegation creates a horse and cart issue as to whether the lack of access to the Director's suite was itself a diminution of duties or whether it was the result of Plaintiff's duties being diminished to the point where she no longer had any reason to have contact with the Director's suite. Despite that issue, Plaintiff may inquire with Mr. Lowe about her contact with the Director's suite in performing her job duties and about whether Mr. Lowe directed Mr. Benedi to exclude Plaintiff from the Director's suite.

In contrast, questions regarding the transfer of the regulatory issuances program to the ES&O are not relevant to Plaintiff's claims. Plaintiff argues that she was not transferred to the ES&O because she was placed on administrative leave; however, Plaintiff does not specify why being placed on administrative leave caused her to be stigmatized and thus, not transferred. Moreover, the transfer of the regulatory issuances program to the ES&O took place in 2011, approximately five years after Plaintiff returned from administrative leave. (Def.'s Mot. at 8.) Mr. Lowe was not involved in the decision to place Plaintiff on administrative leave, and has never been in Plaintiff's chain of command. (*Id.*) Any diminution of duties that occurred after Plaintiff returned from administrative leave would have happened closer to the date of her return and would not have involved Mr. Lowe. The suggestion that the administrative leave was the cause of Plaintiff not being transferred to ES&O is speculative given the time lapse and

accordingly, Plaintiff may not ask Mr. Lowe about the transfer of the regulatory issuances program to ES&O.

The Court having found that Mr. Lowe is not a "high-ranking official" and might have knowledge of some information that could lead to admissible evidence, Plaintiff should not be precluded from deposing Mr. Lowe. Given that discovery has already closed in this case and that Plaintiff is limited in the topics on which she can depose Mr. Lowe, the Court will limit Mr. Lowe's deposition to no more than two hours.

## IV.  PLAINTIFF'S MOTION TO STAY DEPOSITIONS

Plaintiff makes a number of requests in her Motion to Stay Depositions [38]. Specifically, her Motion to Stay the Depositions scheduled on May 9 and 10, 2012 will be denied as moot, given the findings of this memorandum opinion and accompanying order. Plaintiff's Motion to Extend Discovery for the purpose of conducting the depositions will be denied. Plaintiff noticed the depositions prior to the close of discovery; therefore, she may take the depositions after the date for the close of discovery has passed. This memorandum opinion and accompanying order does not preclude Plaintiff from deposing either Mr. Lowe or Agent Holt, and accordingly, Plaintiff's Motion to depose additional witnesses other than Agent Holt and Mr. Lowe will be denied. Finally, Plaintiff's request that the Court order Defendant to make the deponents available will be denied. The Court trusts that the parties can arrange convenient times to take the depositions.

## V.  CONCLUSION

Defendant's Motion for a Protective Order will be granted-in-part and denied-in-part. Plaintiff may depose Agent Holt and Mr. Lowe, subject to the limitations outlined above. A separate order will accompany this memorandum.

DATE: June 25, 2012                                    /s/
ALAN KAY
UNITED STATES MAGISTRATE JUDGE