UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| VALERIE KLINE, | ) <br> ) |
| Plaintiff, | ) <br> ) |
| v. | ) Civil Action No. 10-1802 (RCL) <br> ) |
| KATHERINE ARCHULETA, | ) <br> ) |
| Defendant. | ) <br> ) <br> ) |

**DEFENDANT'S COUNTER-STATEMENT OF MATERIAL FACTS**

Pursuant to LCvR 7(h), Defendant hereby submits this Counter-Statement of Material Facts in response to the Partial Motion for Summary Judgment filed by Valerie Kline, *pro se* ("Plaintiff").

1. In October of 2002, Plaintiff Valerie Kline was hired pursuant to VA #02-171-CJR as a GS-12 to perform regulatory work full time for PMG. PD of Kline. ECF 31-1 at 82-86 and VA #02-171-CJR ECF 31-1 at 87-92.

Defendant's Response: This statement is not material because the vacancy announcement under which Plaintiff was hired in 2002 is not relevant to the instant claim of diminution of duties in her current position. As the record shows, and as noted above, Plaintiff was hired as a GS-12 Management Analyst on the Regulatory Team of the PMG in October 2002 but her PD changed in May 2003 to another position, with very different duties. See Defendant's Statement of Material Facts ("SOMF"), Exhibit 4. After her position changed in May 2003, Plaintiff was no longer encumbered a position performing a full-time regulatory duties. Plaintiff's new PD, effective from May 2003, clearly states that that incumbent performs duties "relating to the

management of OPM's publishing management program" and then enumerates a variety of publications duties. *Id*. Consequently, Plaintiff's long digressions into why she believes she was hired in 2002, and her regulatory duties in comparison to Ms. Carter at that time, are irrelevant to her instant 2006 diminution of duties claim.

     2.    Plaintiff was hired to backup Jacquline Carter._ Affidavit of Wm. Davis, ROI 2006034, dtd 9-25-06, p. 2; *Supplemental Affidavit of Wm. Davis*, ROI 2006034, dtd 10-24-06, p. 6.

     Defendant's Response: This statement is not material because Plaintiff's position changed in 2003 from a full-time regulatory position to a more generalist position that included many duties, including publications, visual information systems and assisting the Regulatory Team, as needed. *See* Defendant's SOMF, Exhibit 4.

     3.    Plaintiff knew the full requirements of the regulatory issuances process and had been Ms. Carter's backup for four (4) years prior to her retirement. See Affidavit of Wm. Davis, dtd 9-25-06, p. 2, ECF 101-3; and *Supplemental Affidavit of Wm. Davis*, dtd 10-24-06, p. 9, *Id*. at 9.

     Defendant's Response: In this statement, it is not clear what Plaintiff means by "knew the full requirements of the regulatory issuances process" nor is it material to her diminution of duties claim. As noted above**,** this court has already made a finding that Plaintiff and Ms. Carter are not similarly situated. *See Kline v. Berry*, CA No. 07-cv-0451 (JR), 602 F.Supp.2d 234 (D D.C. 2009) ("*Kline I*").

     4.    Jacquline Carter was a GS-13 Management Analyst in PMG who managed OPM's Regulatory Issuances System. PD for J. Carter, Exhibit I.

Defendant's Response: Although this statement is correct, in that Ms. Carter had primary responsibility for the regulatory issuances in the PMG, Plaintiff's repeated use of the word "managing" and "non-managing" to describe regulatory work performed by Ms. Carter and Ms. Hickman is unclear and not material to the instant case.[1]

5.   In May of 2003, Plaintiff's PD was revised to add duties other than regulatory ones because there was not enough regulatory work in PMG to support 2 full-time regulatory employees.  See *Deposition of Wm. Davis*, dtd 10-22-09, p. 90, Exhibit A

Defendant's Response: This statement mischaracterized the change in Plaintiff's PD. After her position changed in May 2003, Plaintiff assumed a generalist Management Analyst position and was no longer on the Regulatory Team.  In addition, the reason why her PD changed in 2003 is also not material to the instant claim.

6.   Under Plaintiff's revised PD and Performance Standards, Plaintiff performed substantive regulatory duties including "perform[s] activities related to Regulatory Issuance by providing editorial review and interpretation of policy" and "reviews draft and final regulatory actions for compliance to GSA, OMB and Federal Register requirements[.]" *PD for V Kline*, dtd 6-10-03, ECF 31-1 at 39-43; *Performance Standards for V Kline*, dtd 10-30-06, ECF S6-2 at 7.

Defendant's Response: This statement is Plaintiff's selective quotation from her PD and Performance Standards is not material, nor is it supported by the record.  For example, regarding Plaintiff's claim that she regularly handled correspondence from OMB, Mr. Davis testified,

> . . . there is no correspondence from OMB – only emails.  Mrs. Carter has always handled these emails and on rare occasions Ms. Kline may have received an email when Mrs. Carter was on leave

---

[1]   To the extent that Plaintiff is implying that these positions entailed supervisory duties, this is incorrect.  Mr. Benedi testified that neither Ms. Carter nor Mr. Hickman were supervisors and that the only supervisors in the PMG at the time were himself and Mr. Davis.  *See* Defendants SOMF, Exhibit 24.

> or not available. This would have been rare. Mrs. Carter has the responsibility of reviewing, tracking, and coordinating emails from OMB to OPM program offices since before I was hired in November 2000. Mrs. Carter even attends to this duty while on leave.

Defendant's SOMF, Exhibit 23.

7. After her PD was changed, Plaintiff continued to perform regulatory work and act as Ms. Carter's "backup" from October 7, 2002 until April 5, 2006. *See Affidavit of Wm. E. Davis* dtd 9-2S-06, ECF 63-7 at 2; [ECF 101-3).

Defendant's Response: This statement is also inaccurate because the record, including Plaintiff's own testimony, demonstrates that Plaintiff continued to perform regulatory work after her return from Administrative Leave on June 20, 2006. Plaintiff's own second amended complaint admits that she continued to perform some regulatory functions. ECF No. 123, ¶ 49.

8. Plaintiff was Ms. Carter's "backup" from October 2002 until April 5, 2006 and was eligible to assume Ms. Carter's position when she retired. Affidavit of Wm. Davis, dtd 9-2S-06, p. 2, ECF 101-3; and Supplemental Affidavit of Wm. Davis, dtd 10-24-06, p. 9, Id. at 9.

Defendant's Response: This statement mischaracterizes Plaintiff's position and duties. Around May of 2003 her PD and her position changed, such that she no longer encumbered a full-time regulatory position in the PMG. In addition, whether Plaintiff was "eligible" to assume Ms. Carter's position after Ms. Carter retired is also not material to Plaintiff's instant diminution of duties claim and thus is outside the scope of this case.

9. Plaintiff was fully trained in Ms. Carter's managing position. Affidavit of Wm.Davis, dtd 9-2S-06, p. 2, ECF 101-3 at 2; and Supplemental Affidavit of Wm. Davis, dtd 10-24-06, p. 9, Id. at 9.

Defendant's Response: This statement is not material to the instant case and fails to note that this Court has found that Plaintiff and Ms. Carter are not similarly situated.  *See Kline I*.

10.     On April 5, 2006, Plaintiff was placed on Administrative Leave. ROI 2006024, Investigative  Summary, Exhibit B.

Defendant's Response: This statement is factually correct, but not material to Plaintiff's diminution of duties claim.

11.     Plaintiff engaged in protected activity when initiating an EEO action on April 5, 2006, for being placed on Administrative Leave followed by a formal complaint on May 15, 2006. See ROI 2006024, Exhibits B.

Defendant's Response: This statement is correct Plaintiff took the actions stated above, but Defendant disagree that this constituted protected activity that cause any purported retaliatory diminution of duties as there was no diminution and Plaintiff was required to do her job.

12.     On or before May 2, 2006, Defendant had knowledge of Plaintiff's EEO activity. See EEO Counselor's Rpt., ROI 2006024, dtd S-2-06,  p. 4, Exhibit D.

Defendant's Response: This statement is factually correct, but not material.

13.     Plaintiff was cleared by an Office of Inspector General investigation and returned to work on June 20, 2006. Decl. of  Inspector General Patrick E. McFarland, ECF 37-1.

Defendant's Response: This statement is also not material to Plaintiff's instant diminution of duties case.  Defendant notes that OPM's OIG advised Plaintiff's supervisors that she could return to work, which she did on June 20, 2006.

14. Prior to being placed on Administrative Leave, Plaintiff was authorized "to prepare signed and forward packages to the Federal Register." Decl. of Inspector General Patrick E. McFarland.

Defendant's Response: It is unclear what Plaintiff means in Facts #14-15 by her statement about sending regulatory packages "under her signature and authority." After she returned from Administrative Leave on June 20, 2006, the record shows that Plaintiff still prepared regulatory packages for submission to the Federal Register but that Mr. Coco, while acting as Team Leader for several months, signed the cover letter, which was prepared by Plaintiff. Defendant maintained that this change in a procedure for processing regulatory packages is not a material change in Plaintiff's duties.

15. After Plaintiff returned from Administrative Leave, she was no longer authorized to submit regulatory issuances to the Federal Register Office under her signature and authority. (Sec. A Com pl. at 46). Affidavit of Wm. E. Davis dtd 9-2S-06, p. 2; ECF 63-7; Affidavit of R. Coco, dtd 9-19-06, p. 2, Exhibit 0.

Defendant's Response: Please see Defendant's Response to 14 above.

16. When Plaintiff returned from Administrative Leave, she was assigned primary responsibility for answering PMG telephone calls and responding to Publications e- mail. ROI 2006034, Ex. H, pp. 37-39, 82-83; Affidavit of R. Coco, dtd 9-19-06, p. 2, Exhibit 0.

Defendant's Response: This statement is factually incorrect as Plaintiff had primary responsibility for performing the above tasks although all employees in the Publications Management Group pitched in to ensure the office ran optimally.

17. After Plaintiff returned from Administrative Leave, she was no longer allowed to perform substantive regulatory work unless Mr. Coco assigned it to her. Affidavit of Wm. E. Davis dtd 9-25-06, p. 2, [ECF 63-7]; Affidavit of R. Coco, dtd 9-19-06, p. 2, Exhibit 0.

Defendant's Response: This statement concedes that Plaintiff did in fact "perform substantive regulatory work" after she returned from Administrative Leave on June 20, 2006. Defendant maintained that this procedural change in having Mr. Coco assign her regulatory packages was not a material change in Plaintiff's duties.

18. Mr. Coco was a GS-13 management Analyst. PD for R. Coco, dtd 3-21-02, Exhibit Q.

Defendant's Response: This statement is immaterial to Plaintiff's diminution of duties claim.

19. Mr. Coco was never officially made a team leader. See Defendant's Response to Plaintiffs Interrogatories, #1, p. 5, Exhibit R; Deposition of R. Coco, dtd 2-22-08, pp. 50-51, Exhibit S.

Defendant's Response: This statement is not material to the only issue pending before the Court, which is Plaintiff's alleged diminution of duties claim.

20. Mr. Coco was unofficially a team leader for approximately 3-4 months. Deposition of R. Coco, dtd 2-22-08, p. 50, Exhibit S.

This statement is not material to the claim before the Court.

21. Plaintiff engaged in protected activity on June 20, 2006, when she initiated an informal EEO action for diminishing her duties, followed by a formal complaint on August 9, 2006. See ROI 2006034, Exhibits C and F.

Defendant's Response: This statement is factually correct, but is not material.

22. After Plaintiff returned from Administrative Leave, there was no increase in the amount of regulatory work being processed in PMG and there was no backlog of regulatory work in PMG. Deposition of Wm. Davis, dtd 10-22-09, pp. 28-29, ECF 31-1 at 5-6.

Defendant's Response: Plaintiff statement that after she returned from Administrative Leave there was no increase in the amount of regulatory work is incorrect. Defendant notes that Plaintiff testified that before her placement on Administrative Leave, "there were very few regulations for processing." *See* Defendant's SOMF, Exhibit 20 at 5.

23. On approximately August 1, 2006, PMG initiated the filling of a new, full-time, GS-12 Management Analyst position to perform regulatory work on a full-time basis. PD for S. Hickman dtd 8-1-06. ECF 31-1 at 94-98.

Defendant's Response: Plaintiff's statements ¶¶ 23-40 represent an improper expansion of the scope of Plaintiff's instant diminution of duties claim, which is narrow in scope and limited in time. It is undisputed that Plaintiff did not apply for Vacancy Announcement #06-444-SMO for a full-time position on the Regulatory Team in the PMG in the fall of 2006, and, consequently, these new factual allegations are not material to Plaintiff's instant claim. In Facts #24-25, and throughout her briefing, Plaintiff characterizes the positions in the Regulatory Team as either "managing" or "non-managing" without any indication of the significance of these terms. The record shows that Plaintiff never had primary responsibility for the regulatory issuances of the PMG, and therefore, the positions encumbered by Ms. Carter and Mr. Hickman, are not material to the instant case.

24.     Vacancy Announcement (VA) # 06-444-SM 0 appeared in USA JOBS on August 31, 2006, for advertising the new, full-time GS-12 Management Analyst to perform regulatory work ECF 31-1at 99-109.

Defendant's Response: Please see Defendant's response to ¶ 23 above.

25.     Vacancy Announcement #06-444-SMO was not a position for "managing" the regulatory issuances system. Deposition of C. Benedi, dtd 12-6-12, p. 161, Exhibit G.

Defendant's Response: Please see Defendant's response to ¶ 23 above.

26.     Stephen Hickman was hired to fill the new, full-time, GS-12 non-managing Management Analyst position in PMG to perform regulatory work in 2006. ECF 31-1 at 94-98.

Defendant's Response: Please see Defendant's response to ¶ 23 above.

27. Mr. Hickman began working for Defendant on October 17, 2006. ROI 2006024, p. 4, Exhibit D.

Defendant's Response: Please see Defendant's response to ¶ 23 above.

28.     Mr. Hickman was assigned the regulatory work Plaintiff had performed before she was placed on Administrative Leave. Deposition of Wm. Davis, p. 29, lines 4-6, dtd 10-22-09, Exhibit A.

Defendant's Response: Please see Defendant's response to ¶ 23 above.

29.     Plaintiff's was not informed that PMG was filling a new regulatory position or that her regulatory duties were being transferred to the new, full-time, GS-12, Management Analyst position in 2006. (Answer to Sec. Am. Com pl. ¶ 88)

Defendant's Response: Please see Defendant's response to ¶ 23 above. In addition, paragraph 29 is not material to the instant case. It is undisputed that Plaintiff did not apply for Vacancy Announcement #06-444-SMO. In support of Fact #29, Plaintiff erroneously cites,

"Answer to Sec. Am. Compl ¶ 88." Defendant, however, did not file an Answer to Plaintiff's Second Amended Complaint. Plaintiff's allegation that her duties were transferred to Mr. Hickman's position is unsupported by the record. Moreover, Plaintiff cites no authority, nor can she, for her suggestion that Defendant had a duty to inform her regarding vacancy announcements posted on USAJobs.

30. Mr. Hickman was a GS-11 before he was hired by Defendant in 2006. Deposition of S. Hickman, dtd 12-13-12, p. 11, Exhibit I.

Defendant's Response: Please see Defendant's response to ¶ 23 above.

31. Mr. Hickman was hired to "take over" her managing position when she retired. Affidavit of Wm. Davis, dtd 2-6-07, p.10. ECF 101-4; Deposition of C. Benedi, dtd 12-6-12, p. 114, Exhibit G.

Defendant's Response: Please see Defendant's response to ¶ 23 above.

32. Mr. Hickman was hired to "backfill" Ms. Carter's position. Affidavit of Wm. Davis, dtd 2-6-07, p. 7, ECF 101-4.

Defendant's Response: Please see Defendant's response to ¶ 23 above.

33. Mr. Hickman was hired to "train" and "take over" Ms. Carter's managing position when she retired. Deposition of C. Benedi, dtd 12-6-12, p. 114, Exhibit G.

Defendant's Response: Please see Defendant's response to ¶ 23 above.

34. Ms. Carter submitted her official request to retire on October 17, 2006. ECF 66 at 9.

Defendant's Response: Please see Defendant's response to ¶ 23 above.

35. Ms. Carter retired on approximately November 4, 2006. Affidavit of Wm. Davis, dtd 2-6-07, p. 7. ECF 10-4.

Defendant's Response: Please see Defendant's response to ¶ 23 above.

36. Mr. Hickman "took over" the responsibility for managing the regulatory issuances system following Ms. Carter's retirement. Deposition of C. Benedi, dtd 12-6-12, p. 162, Exhibit G; Deposition of Wm. Davis, dtd 2-6-07, p. 10, ECF 101-4; Deposition of S. Hickman, dtd 12-13-12, p. 16, Exhibit I.

Defendant's Response: Please see Defendant's response to ¶ 23 above.

37. Mr. Hickman was a GS-12 Step 1 when he assumed Ms. Carter's "managing" position. Affidavit of Wm. Davis, dtd 2-6-07, p. 10. ECF 101-4.

Defendant's Response: Please see Defendant's response to ¶ 23 above.

38. Mr. Hickman was not eligible for a GS-13 position when Ms. Carter retired on November 3, 2006. Deposition of S. Hickman, dtd 12-13-12, p. 11, Exhibit I.

Defendant's Response: Please see Defendant's response to ¶ 23 above.

39. Ms. Carter's "managing" position was not competitively advertised on USA Jobs until 2 years after Ms. Carter retired in 2008. ECF 81 at 14.

Defendant's Response: Please see Defendant's response to ¶ 23 above. In addition, paragraph 39, relating to the PMG's posting for a GS-13 full-time regulatory position in 2008 is also not relevant to the instant claim.[2]

40. Mr. Davis told Kline "no one wants to deal with you due to your EEO activity". See Supplemental Affidavit of Wm. Davis, dtd 3-8-07, ROI 2007008, Exhibit J.

Defendant's Response: Please see Defendant's response to ¶ 23 above. In addition, paragraph 40 is a remark by Mr. Davis from a *later* affidavit in 2007 from another yet EEO complaint filed by

---

[2] Plaintiff filed a separate EEO action regarding this vacancy announcement, which is still working its way through the administrative process.

Plaintiff. This affidavit, read in context with Plaintiff's affidavit for ROI 2007008, which is not a part of this case, shows that Plaintiff's affidavit alleged Mr. Davis made this remark after she commented on not being invited to Ms. Carter's retirement lunch during a conversation about Plaintiff's working relationships. See ECF 124-4 at 18 and Exhibit 34.

December 24, 2014                                  Respectfully submitted,

                                                   RONALD C. MACHEN JR, D.C. BAR # 447889
United States Attorney
for the District of Columbia

DANIEL F. VAN HORN, D.C. Bar # 924092
Civil Chief

By: _____ /s/
KENNETH ADEBONOJO
Assistant United States Attorney
Judiciary Center Building
555 4th Street, N.W. – Civil Division
Washington, D.C. 20530
Telephone: (202) 252-2562